IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUN 2 7 2008
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

ADEWALE OGUNYALE,

      Petitioner,

v.                                                     Civil Action No. 2:07cv52
                                                     (Judge Maxwell)

WARDEN ESPARZA,
DR. WATERS,
DOMINIC GUTIERREZ SR AND
HEALTH ADMINISTRATOR BRESCOACH,

      Respondents.

## REPORT AND RECOMMENDATION/OPINION

The *pro se* plaintiff initiated this case on July 9, 2007, by filing a civil rights complaint against the above-name defendants. The plaintiff paid his initial filing fee on July 16, 2007. Consequently, on July 18, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at the time. Thus, the Clerk was directed to issue summonses and forward copies of the compliant to the United States Marshal Service for service of process.

On October 9, 2007, the defendants filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. A <u>Roseboro</u> Notice was issued two days later.

On November 9, 2007, the plaintiff filed a Response to the Defendants' Motion to Dismiss and filed a Motion for Summary Judgment.

This case is before the undersigned for a Report and Recommendation on the defendants'

Motion to Dismiss or for Summary Judgment and plaintiff's Motion for Summary Judgment.

## II. The Pleadings

### A. The Complaint

On July 9, 2007, the plaintiff, a federal inmate incarcerated at the Federal Correctional Institution, ("FCI") Morgantown, West Virginia, filed this *pro se* complaint under 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) and the Eight Amendment of the United States Constitution. In his complaint, plaintiff alleges that the administration and medical staff of FCI Morgantown were deliberately indifferent in refusing him access to medical care for his serious medical conditions. Additionally, plaintiff contends that the medical staff and prison administrations' actions were based on racial discrimination.

Plaintiff seeks a court order requiring that he receive a neurological evaluation by a specialist, a prescription for Lyrica and further medical treatment for his deep vein thrombosis. Additionally, plaintiff seeks $500,000 in compensatory and punitive damages from the defendants and refund payments from his visits to the Correctional Institution's Health Services.

The record shows that the plaintiff suffers from three chronic and serious medical conditions: type I diabetes, hypertension and hyperthyroidism. Because of these conditions, the plaintiff is monitored through the Chronic Care Clinic at FCI Morgantown. Inmates assigned to the Chronic Care Clinic are seen at least once every three months to monitor their condition. Additionally, the plaintiff reports to Health Services on a need basis. According to the medical records, the plaintiff's serious medical conditions have responded quite well to the aforementioned regular medical care.

Between the dates of April 7, 2006 and June 18, 2007, the plaintiff made twelve requests for medical treatment for his leg, back, arm and hand pain. After each request, the plaintiff was seen

by the medical staff and treated for his complaints. At the conclusion of each of the medical consultations and evaluations, the plaintiff was proscribed a variety of treatments including both over the counter and prescription medicals, nutrition plans, work regiments and physical therapy. At no time did the medical staff conclude that the plaintiff's conditions were life-threatening. Since June 30, 2007, the plaintiff has not reported any further medical condition nor has he requested any additional medical care.

**B.     The Defendants' Motion**

In their motion, the defendants assert that the plaintiff's Eighth Amendment claim should be dismissed because:

>    (1) the plaintiff failed to exhaust all his administrative remedies; and

>    (2) the plaintiff does not meet both prongs of the deliberate indifference standard.

The defendants further assert that the plaintiff's Bivens claims should be dismissed because Bivens liability may not be premised on a theory of respondent superior and cannot be sustained in the absence of personal involvement. Additionally, the defendants assert that the plaintiff's discrimination and due process claims have not been fully exhausted. Lastly, the defendants assert that the plaintiff has failed to show any evidence of retaliation by the medical staff and prison administration.

**C.     The Plaintiff's Reply**

In his motion in opposition to the defendants' response, plaintiff again reasserts his original complaints. Additionally, the plaintiff asserts that he did fully exhaust his administrative remedies. Therefore, the plaintiff requests that the defendants' motion be denied.

### III. Standard of Review

A.  **Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the well-pleaded material factual allegations. Advanced Health Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

B.  **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedures, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth or limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of

informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue at trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

#### A. Bivens Claim

In establishing a Bivens claim, the plaintiff must specify the unconstitutional acts each defendant committed to deprive plaintiff of a federal right, show the defendant's personal involvement in denying an inmate his or her federal right, and establish a causal connection to the harm alleged. See West v. Atkins, 487 U.S. 42, 49 (1988); Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Additionally, in order to establish an Eighth Amendment violation, an inmate must prove that objectively, the deprivation of a basic human need was "sufficiently serious" and subjectively, the prison official acted with a "sufficient culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297-98 (1991). Under a Bivens action based on the failure to provide medical care, a supervisor may be found liable when (1) "the supervisor defendant failed promptly to provide an

inmate with needed medical care," (2) "the supervisor defendant deliberately interfered with the prison doctors' performance," or (3) "the supervisor defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).

Additionally, "in a Bivens suit, there is no *respondeat superior* liability. Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted).

Regarding defendants Gutierrez and Esparza, the record shows that both defendants do not meet the criteria set forth in Miltier. Gutierrez and Esparza reviewed the plaintiff's administrative complaints and signed their names to forms denying the plaintiff's requests. See Memorandum (dckt. 21) Exhibits 3 & 4. Other than the signatures on forms, petitioner alleges nothing else to show Gutierrez and Esparza acted in tacit authorization or indifference to the alleged constitutional violations of the prison medical staff. Although both Gutierrez and Esparza relied on the opinion of the medical staff in denying the appeals, this alone does not show any tacit authorization or indifference by either defendant. See Miltier, 896 F.2d at 854. Additionally, assuming that the plaintiff's claims are based on the theory that Gutierrez and Esparza's supervisory positions established their tacit authorization or indifference to the alleged constitutional violations, under Turlock the claims must fail.

**B.     Ineffective Medical Treatment**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is

not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). In order to establish an Eighth Amendment violation, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

With regard to claims of inadequate medical attention, the objective component is satisfied by a serious medical condition. A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987), *cert. denied*, 486 U.S. 1006 (1988). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347.

The prisoner may satisfy the subjective component of a "cruel and unusual punishment" claim by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[A]cting or failing to act with deliberate indifference to a substantial risk to a prisoner is the equivalent of recklessly disregarding that risk."

Id. at 836. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va.1996), aff'd, 108 F.3d 1373 (4th Cir.1997).

Negligence or malpractice does not violate the Eighth Amendment. Estelle, 429 U.S. at 106.

Contrary to the government's belief, the irrefutable facts of the record show that the plaintiff was and is suffering from a serious medical condition. The record clearly shows, and the government concedes in its memorandum, that the plaintiff suffers three medical conditions: type I diabetes, hypertension and hyperthyroidism. See Memorandum (dckt. 21) p. 3. Although these conditions are not life threatening, the conditions require prompt and continuous medical treatment, which is evident in the fact that the plaintiff is monitored through the Chronic Care Center at FCI Morgantown. To consider, let alone refer to the plaintiff's medical conditions as anything less than serious would subscribe the Court to an interpretation of medicine that the law, science and common sense does not permit.

However, the record also clearly shows that the plaintiff received proper medical care by the medical staff at FCI Morgantown. At no time did the medical staff deny access to medical attention. In fact, the record shows that the plaintiff received appropriate medical care in a prompt manner. Plaintiff had numerous medical evaluations. See Memorandum (dckt. 21) Exhibit 2. Plaintiff went

8

through a multitude of X-rays and MRI tests to determine the cause of his serious pain. Id. Additionally, the medical staff at FCI Morgantown prescribed a series of treatment plans for the plaintiff, including medication, nutrition plans, physical therapy and workout regimens. Id. The facts clearly show that the medical staff at FCI Morgantown adequately and efficiently treated the plaintiff's serious medical condition. Although the plaintiff might disagree with the extent of his treatment and with the ultimate conclusions of the medical staff, he can not substitute the conclusions of the medical staff for his own diagnosis. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, the plaintiff's contention should be dismissed.

## C. Exhaustion

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provided in § 1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. § 1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002). Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Furthermore, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 848 U.S. 81 (2006) (recognizing the PLRA provisions contain

9

a procedural default component).

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmates's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

According to the record, the plaintiff has not satisfied the preliminary requirements of exhaustion in connection with his discrimination and equal protection allegations. Plaintiff has followed the administrative procedures in regards to his other claims. However, none of his previous administrative forms contain any mention or statement regarding his discrimination and equal protection allegations. See Memorandum (dckt. 21) Exhibit 1. Contrary to the plaintiff's misguided interpretation, even the most liberal interpretation of his previous forms does not show a minute speck of any discrimination and equal protection allegations. Id. Therefore, because the plaintiff has

failed to file any administrative action regarding the alleged discrimination and equal protection violations, exhaustion has not been completed and plaintiff's contention must be dismissed.

**D.     Retaliation**

In establishing a retaliation claim, a plaintiff must allege that the retaliatory action was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). In asserting his claim, an inmate must present more than conclusory allegations of retaliation. Adams, 40 F.3d at 74. Thus, mere naked allegations of reprisals are not sufficient. Id.

In the present case, the plaintiff states very little regarding retaliation. In his complaint, the plaintiff states the following regarding retaliation:

> Plf. Avers that there are "other acts" admissible under the Federal Rules of Evidence to show a pattern of "retaliation" and "discrimination" against the plf. by the defendants and other DOE employees of the B.O.P.

See Complaint (dckt. 1) p. 8.

Additionally, the plaintiff alleges that he "lives in a state of fear" of retaliation by prison officials. Id. at 9. Other than these broad and ambiguous statements, the plaintiff provides no specific instances of retaliatory actions by prison officials. Moreover, plaintiff provides no specific threats of retaliatory actions made by prison officials. Instead, at best, plaintiff offers only naked allegations of possible retaliatory actions. Therefore, the plaintiff's allegations of retaliation should be dismissed.

**V.     Recommendation**

For the foregoing reasons, the undersigned recommends that the defendants' Motion to

Dismiss, or for Summary Judgment (dckt. 17) be **GRANTED** and that the plaintiff's claims be **DISMISSED** as follows:

    (1) <u>Bivens</u> claims against defendants Esparza and Gutierrez **DISMISSED with PREJUDICE**;

    (2) Eighth Amendment claims **DISMISSED with PREJUDICE**;

    (3) Discrimination and due process claims **DISMISSED with PREJUDICE**;[1] and

    (4) Retaliation claims **DISMISSED without PREJUDICE**.

In light of the Court's previous findings, the undersigned recommends that the plaintiff's Motion for Summary Judgment (dckt. 24) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to file a timely objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to sent a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last know address as shown on the docket, and to counsel of record via electronic means.

---

[1] Plaintiff cannot now timely raise claim in administrative hearing pursuant 28 C.F.R. § 542.10 <u>et seq</u>.

12

DATED: June 27, 2008

                                          JOHN S. KAULL
                                          UNITED STATES MAGISTRATE JUDGE